In re MOLTEN METAL TECHNOLOGY, INC., MMT of Tennessee, Inc., MMT Federal Holdings, Inc., M4 Environmental Management, Inc., M4 Environmental L.P., Debtors.

Nos. 97–21385–RS to 97–21389–RS.

United States Bankruptcy Court, D. Massachusetts.

July 7, 2006.

Eric K. Bradford, U.S. Dept. of Justice, Boston, MA.

Alan L. Braunstein, Riemer & Braunstein, LLP, Boston, MA for Chapter 11 Trustee, Stephen S. Gray.

## MEMORANDUM OF DECISION REGARDING FINAL COMPENSATION AND EXPENSE REQUESTS

ROBERT SOMMA, Bankruptcy Judge.

Before the Court are applications requesting final compensation for services and reimbursement of expenses submitted by six professionals: the Chapter 11 Trustee, his counsel, his two special counsel, his accountant, and his special consulting expert ("Professionals").

### Background

On December 3, 1997, Molten Metal Technology, Inc. and four related or affiliated entities commenced separate but ultimately jointly-administered Chapter 11 cases (collectively, "Case"). At that time, the Debtors were engaged in the business of pollution prevention and recycling for hazardous, non-hazardous and radioactive materials.

On August 21, 1998, at the request of the Debtors' principal lenders, and over the objection of the Debtors and the Creditors Committee, the Court ordered the appointment of a Chapter 11 Trustee and, on August 24, 1998, approved the appointment of Stephen S. Gray in that capacity. Upon installation, the Trustee faced a case burdened with an unanticipated $20 million administrative insolvency and apparently tainted by significant allegations of concealment, misrepresentation and questionable conduct by the Debtors, both at the senior management and board levels. The Trustee and his team promptly and tirelessly engaged in a systematic campaign of investigation, asset liquidation and recovery litigation that achieved the following: $64 million in asset sale proceeds and litigation recoveries; $80 million in claims reduction (administrative, senior secured, and unsecured); full payment of administrative and priority claims; and a five-percent distribution to general unsecured creditors without priority. These achievements occurred in circumstances where the Trustee and his team had to overcome numerous and formidable barriers to recovery—legal, economic, strategic, and tactical. In the end, the outcome and the achievements thus noted are fairly characterized as unexpected, noteworthy, and commendable.

### Professionals

By various orders entered in the Case, the Court authorized the employment of

the Professionals and, for the most part, approved interim compensation and expense reimbursement on a regular basis during the pendency of the Case. At present, the Professionals seek final authorization for their full compensation and expense requests and, where applicable, allowance of retainers and payment of balances due.

### *Framework*

■ The requests of the Professionals are reviewed in accordance with sections 330 and 327 of the Bankruptcy Code, 11 U.S.C. §§ 330 and 327. In conducting this review, the Court looks to the approach and standards enunciated, and the cases cited, in *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr.D.Mass.1991) *aff'd* 142 B.R. 584 (D.Mass.1992). More specifically, the Court employs the so-called lodestar approach required in this Circuit, namely, reasonable hours times reasonable hourly rates, yielding as its product a fair and reasonable fee. *Boston & Maine Corp. v. Moore,* 776 F.2d 2 (1st Cir.1985).

For most of its duration, this case was presided over by my predecessor, Judge Carol Kenner, who retired in July, 2004. I have presided over only the final phases of the Case and hence did not have the customary vantage on the performance of the Professionals afforded by observation during judicial proceedings. However, as in all cases, the Court does have the benefit of the record of the Case (here amounting to almost a decade's trove of written submissions), court rulings, the ultimate outcome of the Case, and the written requests for compensation and expenses that are the subject of this order.

■ No objection or opposition has been raised to the compensation and expense requests at hand. Nonetheless, the Court has an independent duty to review the requests, and has done so within the foregoing formula and framework.

### *Premium*

■ Riemer & Braunstein ("R & B"), the Trustee's general counsel in the Case, has requested a $400,000 premium in addition to its hourly/lodestar compensation request of $4,564,078.75. R & B has submitted a memorandum of law in support of its request, setting forth the legal principles, the decisional law, and the Case performance warranting such an upward adjustment. At bottom, R & B rests its request on three factors: *first.* the outcome—funds available for a five percent distribution to general unsecured creditors where at the outset there was a $20 million administrative insolvency; *second,* R & B's risk of nonpayment given that initial insolvency [1]; and *third,* the complexity of the transactional and litigation challenges overcome to produce the outcome. In addition, R & B extols its diligence, conscientiousness, resolve in the face of opposition, legal capabilities and the like. Finally, R & B characterizes the premium request—an approximately nine percent upward adjustment from its hourly/lodestar request—as justified, warranted, and reasonable.

■ The United States Trustee opposes the premium request, contending that (a) the lodestar is presumed to be a reasonable fee and (b) an upward adjustment to the lodestar is warranted, if at all, in the rare case where (i) the quality of service surpasses reasonable expectations given the rates charged and (ii) the success in the Case is exceptional. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d

---

1. R & B's assertion regarding risk of nonpayment is somewhat puzzling in that interim compensation was awarded on *nine* separate occasions from December 1998 forward.

891 (1984); *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Moreover, the U.S. Trustee correctly notes, R & B has the burden of presenting specific evidence that its efforts both surpassed reasonable expectations and yielded a truly exceptional result in the Case. *Lipsett v. Blanco,* 975 F.2d 934 (1st Cir.1992); *In re Public Service Co. of New Hampshire,* 160 B.R. 404 (Bankr.D.N.H.1993).

The Court acknowledges that R & B performed at a high level of skill in the Case. Moreover, the Court acknowledges that the outcome is notable, especially given the circumstances extant at the outset. Yet the Court must observe that the Trustee engaged R & B with the reasonable expectation that its experience and capabilities would meet the very challenges that emerged, and that R & B would charge, and be entitled to charge, its customary rates to do so. Moreover, the Court must also observe that R & B did not achieve the notable outcome all by itself (nor in fairness has R & B claimed to have done so). Indeed, in an irony that does not escape the Court's attention, the Trustee—the statutory client and presumed leader of the Case administration and recovery effort—cannot exceed the statutory maximum on his compensation even if (as is arguably the case here) his performance warrants a premium as much as does R & B's.

In the end, while the Court acknowledges that the result is both substantial and unexpected, the rare and limited circumstances in which an upward adjustment is warranted are not here present. Responsibility for the outcome is surely attributable to the team and not just one player. The management of complex cases requires experienced and capable professionals, which is what the Trustee hired in R & B. That R & B's experience and capabilities contributed to the outcome may abundantly justify its engagement but its lodestar allowance herein fairly and reasonably compensates it for the application of those attributes to the requirements of the engagement. In reaching that determination, the Court neither intends nor suggests any disparagement whatsoever in respect of R & B's performance or its premium request. In concert with others, R & B helped to achieve an outcome beneficial to the estate and its creditors. In doing so, R & B justified both its well-earned reputation and its customary rates.

### Conclusion

The Case, and the performance of the Professionals, represent one end of the Chapter 11 spectrum: not a business, financial or ownership reorganization or restructuring but rather a liquidation, litigation and investigatory exercise that is no less challenging and complex. Indeed, in some respects, the Case posed more difficult and demanding issues than the traditionally transaction-driven reorganization. For example, by way of contrast, see *In re Syratech Corporation,* 2005 WL 3320569 (Bankr.D.Mass.2005).

Here, the Court finds that the Professional requests comport with the requisites of the relevant statutes and applicable national and local rules, that the requests are reasonable in the rates charged and the hours expended, and that the performance of the Professionals warrants the compensation and expenses requested.

Accordingly, the Court grants the final compensation and expense requests of each of the Professionals but denies R & B's premium request. A separate order shall enter as to the applications.